UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHELBY GREENE ZARLIN,<br><br>                        Plaintiff,<br><br>  -v-<br><br>AIR FRANCE,<br><br>                        Defendant. | Case No. 04-CV-07408 (KMK)<br><br>OPINION AND ORDER |

Appearances:

Anthony Michael Sabino, Esq.
Sabino & Sabino
Mineola, NY
*Counsel for Plaintiff*

Christopher Raleigh, Esq.
Cozen O'Connor, LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff Shelby Greene Zarlin ("Plaintiff") alleges she suffered injuries as the result of an accident on an international flight operated by Defendant Air France ("Defendant") and that the airline is liable for her injuries. Defendant moves for Summary Judgment under Federal Rule of Civil Procedure 56. For the reasons stated in this Opinion, Defendant's Motion for Summary Judgment is GRANTED.

## I. Background

      Plaintiff is an adult female, who was sixty-four years of age at the time of the matters alleged in the Complaint. (Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1.) On September 6, 2003, Plaintiff was a passenger aboard Air France Flight 23, which departed from John F. Kennedy International

Airport, New York, New York, for Charles DeGaulle International Airport, Paris, France. (Def.'s 56.1 ¶¶ 2-3; Pl.'s 56.1 ¶¶ 2-3.)  At the outset of the flight, Plaintiff occupied a window seat in Row 39 of the "coach" class cabin.  (Def.'s 56.1 ¶¶ 4-5; Pl.'s 56.1 ¶¶ 4-5.)  Plaintiff's husband, Leonard Zarlin, occupied the aisle seat of the same three-seat row, with an empty seat between him and Plaintiff.  (Leonard Zarlin Dep. 13:13-14:6.)  Passenger Gary Ruinsky ("Ruinsky") occupied the seat directly in front of Plaintiff.  (Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)  At various points during the flight, Ruinsky attempted to recline his seat.  (Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶¶ 29, 54, 63, 90, 123.)  According to Air France Flight Attendant Eric Sagot ("Sagot"), by requirement of the Direction Générale de L'Aviation Civile, the aviation regulatory body for France, and by Defendant's own practice, passengers are required to have their seats in the upright position at the time of take-off, after which passengers are permitted to recline them. (Sagot Dep. 37:11; Pl.'s Dep. 101:23-24.)

Plaintiff alleges that Ruinsky, seated in front of her, "pushed his seat back" until it touched her.  (Compl ¶ 14; Def.'s 56.1 ¶ 9.)  Plaintiff alleges that Ruinsky took this action deliberately and that, following a dispute between them, a flight attendant was summoned. (Compl ¶¶ 14-15.)  Flight Attendant Sagot offered Plaintiff reseating away from Ruinsky in Row 48 of the aircraft, which had three contiguous empty seats.  (Def.'s 56.1 ¶¶ 10-11; Pl.'s Dep. 106:15-16, 106:21-23.)[1]  Plaintiff moved to this row of seats, but returned to her original seat behind Ruinsky approximately thirty-five or forty minutes later, of her own volition and without informing any member of the crew.  (Def.'s 56.1 ¶¶ 12-13; Pl.'s 56.1 ¶¶ 12-13; Pl.'s Dep. 107:4,

---

[1] It is unclear why Plaintiff's husband did not offer to switch seats with his wife, or why Plaintiff did not simply move to the empty middle seat between them.

112:6-19.)

Plaintiff alleges that after returning to her original seat, Ruinsky again "deliberately push[ed] his seatback into her" and that, in response, Plaintiff and/or her husband again summoned the flight attendant. (Pl.'s 56.1 ¶¶ 123-24.) On arrival, Sagot asked Ruinsky to put his seat up for the meal service and although Ruinsky did so, he once again pushed his seat back down "a little" when Sagot left. (Pl.'s 56.1 ¶ 127.) Plaintiff alleges that, following the meal service, Ruinsky "mad[e] a scene" and that, after she called Sagot yet again, Ruinsky pushed his seat back, "striking and injuring the Plaintiff." (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 129.)

Plaintiff also complains of Defendant's conduct following this alleged injury. The Parties agree that, after this incident, Sagot moved Ruinsky and his wife to new seats "toward the front of the plane" and left the seats in front of Plaintiff empty. (Pl.'s 56.1 ¶ 133.) The parties also agree that Plaintiff asked Sagot for aspirin and that Sagot told her none was available. (Pl.'s 56.1 ¶ 131.) While the Parties dispute the specifics, Plaintiff alleges that she requested a wheelchair for her use in the airport at the time of the plane's arrival in Paris and that Sagot told Defendant that none was available," although a wheelchair ultimately was made available for her use upon arrival. (Pl.'s 56.1 ¶ 135; Pl.'s Dep. 136:7.)

Once in Paris, France, Plaintiff boarded a connecting flight to Florence, Italy. (Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.) Plaintiff did not seek any medical treatment in Italy. (Def.'s 56.1 ¶ 19; Pl.'s 56.1 ¶ 19, 138.) Plaintiff did seek medical treatment following her return to the United States for her alleged injury to her right knee suffered on the flight to Paris. (Def.'s 56.1 ¶ 20; Pl.'s 56.1 ¶ 140; Compl. ¶ 51.)

Plaintiff seeks damages for, among other things, medical costs, the value lost in a country

club membership, and expenses incurred for pool membership and to resurface her tennis court, all supposedly as a result of her injury. (Compl. ¶ 52-55.)

## II.  Discussion

### A.  Standard of Review

Summary judgment may be granted when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *See Tufariello v. Long Island R.R.*, 458 F.3d 80, 85 (2d Cir. 2006). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Id*. (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).

To avoid summary judgment, the non-moving party must offer "some hard evidence" of its version of the facts, not merely rely on conclusory allegations or speculation. *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998); *see also McPherson v. N. Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a

motion for summary judgment."); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) ("[The non-movant] must do more than show there is some metaphysical doubt as to the material facts. . . ." (internal quotations omitted)).

The materiality of the facts considered will be governed by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court is not charged with weighing the evidence, but with determining whether there is a genuine issue for trial. *See Castro v. Met. Transp. Auth.*, No. 04 Civ. 1445, 2006 WL 1418585, at *2 (S.D.N.Y. May 23, 2006); *see also Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate if "there are no genuine issues of material fact and a moving party is entitled to a judgment as a matter of law." *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003).

B.  Applicability of the Warsaw Convention

The Warsaw Convention, to which the United States is a party, applies to all "international transportation" by air. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 1, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 ("Warsaw Convention") *reprinted in* 49 U.S.C. § 40105. It sets forth a comprehensive scheme that specifies the liability of international air carriers for personal injuries and loss of baggage and goods. *See id.*; *see also El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999) (stating that Convention provides "comprehensive scheme of liability rules").

Under the Warsaw Convention, "international transportation" is defined as "any transportation in which, according to the contract made by the parties, the place of departure and

the place of destination, whether or not there be a break in the transportation or a transshipment, are situated . . . within the territories of two High Contracting Parties. . . ." Warsaw Convention art. 1. Here, the incident in question took place during international air travel from the United States to Italy via France, and it is undisputed that the United States, Italy, and France are "High Contracting Parties" to the Warsaw Convention. This case therefore is governed by the Warsaw Convention.[2]

Where applicable, the Warsaw Convention provides the exclusive basis by which a passenger may pursue an action for damages arising out of international air travel. *See El Al Israel Airlines*, 525 U.S. at 168-69; *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356-57 (2d Cir. 2002). If a passenger's bodily injuries fall within the purview of the Warsaw Convention, the passenger is either entitled to recovery under Article 17, which covers bodily injuries to passengers, or not entitled to recover at all. *See El Al Israel Airlines* 525 U.S. at 161; *see also Magan*, 339 F.3d at 161. Still, "[s]ince liability under the Convention is nearly absolute, courts should be wary of reckless invocation of the Convention by eager but undeserving litigants." *Margrave v. British Airways*, 643 F. Supp. 510, 515 (S.D.N.Y. 1986).

C.  Reclining of Seat as an Unexpected or Unusual Event under the Warsaw Convention

---

[2] Plaintiff contends that the International Conference on Air Law held in Montreal, Canada on May 1999, which produced a treaty commonly known as the Montreal Convention, may control in this instance. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), ("Montreal Convention"), S. Treaty Doc. No. 106-45, *reprinted in* 1999 WL 33292734. However, the Montreal Convention had not yet entered into force when Plaintiff was injured on September 6, 2003. The Montreal Convention entered into force on November 4, 2003, *id.* art. 53(6), and it does not apply retroactively. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 372-73 (2d Cir. 2004).

Defendant's first asserted ground for summary judgment is that Plaintiff's alleged injury was not the result of an "accident" within the meaning of the Warsaw Convention.

Liability for a passenger's injury under the Warsaw Convention arises only if a passenger's injury is caused by an "accident" as defined by the Convention. *See Olympic Airways*, 540 U.S 644, 652 n.8 (2004) ("[T]here can be no liability for passenger death or bodily injury under the Convention in the absence of an Article 17 'accident' . . . ."). Article 17 of the Convention provides that:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Warsaw Convention art. 17.

Under the Warsaw Convention, classification as an "accident" turns on whether an incident was an "unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). Thus, "when [an] injury indisputably results from [a] passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Id.* at 406; *see also Olympic Airways*, 540 U.S. at 652. The Supreme Court has held that "it is the cause of the injury - rather than the occurrence of the injury" that must be unexpected or unusual so as to satisfy the definition of "accident." *Olympic Airways*, 540 U.S. at 650.

Here, Plaintiff alleges that her injury was caused by the sudden and violent reclining of the seat in front of her. Seat reclining is ordinarily permitted during an airline flight except

during taxi, take-off, and landing.  (Sagot Dep. 37:11; Pl.'s Dep. 91:5.)  It is a common occurrence, particularly on extended flights.  Air travelers are accustomed to reclining their own seats and are aware that other passengers may also choose to do so.  *See Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 884 (5th Cir. 1996) (holding fully reclined seat not an unusual or unexpected event on airplane and therefore not creating Warsaw Convention "accident" where passenger had injured herself maneuvering around it).  Plaintiff herself acknowledged during her own deposition that the person seated in front of her had the right to recline his, stating:  "Yes, he did.  He had the right to recline his seat."  (Pl.'s Dep. 101:23-24.)

Plaintiff argues that the unexpected event was not the reclining of the seat but, rather, Ruinsky's weaponzing of it by employing it violently to injure her.  The Court has serious doubts about the validity of this argument in this context.  Even accepting, without deciding, that violent reclining of a seat would, in other contexts, amount to a Warsaw Convention "accident," it is unlikely that the action amounts to an "accident" here.  In this case, the prior exchanges between Plaintiff and Ruinsky, so substantial and confrontational that Plaintiff summoned the flight crew several times and was provided reseating away from Ruinsky, suggest that physical and forceful confrontation involving the seat could not have been "unusual [to] or unexpected" by Plaintiff or anyone else so as to trigger the Warsaw Convention definition of "accident."  However, this Court will assume for purposes of this motion that there are at least disputed facts to be resolved by a jury that would determine whether the "unusual or unexpected" nature of the alleged cause of injury to Plaintiff is sufficient to amount to a Warsaw Convention "accident."  The outcome of the motion is in any case controlled by looking to the causality of Plaintiff's injury.

D. Proximate Cause

Assuming, then, that the seat recline at issue in this case was unusual or unexpected, Plaintiff's suit nevertheless fails because of her choice to return to the one seat where she knew the passenger in front was seeking to recline in a way she believed interfered with her person.

The Supreme Court has emphasized that when determining the existence of an accident pursuant to the Warsaw Convention, the definition of "'accident' should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries" and that "there are often multiple interrelated factual events that combine to cause any given injury." *Olympic Airways*, 540 U.S. at 651, 653 (quoting *Saks*, 470 U.S. at 405); *see also Saks*, 470 U.S. at 406 ("Any injury is the product of a chain of causes. . . ."); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1196 (3d Cir. 1978) ("Article 17 requires as a condition precedent to liability under the Warsaw Convention a determination that an 'accident' occurred and that the accident proximately caused the injury sustained."). Following *Saks*, courts apply proximate cause analysis in determining the air carrier's liability pursuant to the Warsaw Convention. *See, e.g.*, *Cush v. BWIA Int'l Airways, Ltd.*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001) (applying proximate cause analysis in determining whether an "unusual event is a 'link in the chain' that led to an 'accident' for purposes of the Warsaw Convention") (quoting *Saks*, 470 U.S. at 406); *Margrave v. British Airways*, 643 F. Supp. 510, 512 (S.D.N.Y. 1986) (noting broad practice of applying proximate cause analysis in determining air carrier liability under the Warsaw Convention).[3]

---

[3] The Second Circuit has recognized that questions of proximate cause are subject to summary judgment in appropriate cases. *See Goldberg v. Mallinckrodt, Inc.*, 792 F. 2d 305, 310 (2d Cir. 1986) (affirming summary judgment grant based on lack of proximate cause); *see also*

Nothing about the Plaintiff's circumstances required her to return to the seat behind Ruinsky, leaving the row of seats that she had been offered by the airline as an accommodation. Thus, Plaintiff's choice to do so was the proximate cause of the alleged torts. *See Cush*, 175 F. Supp. 2d at 487-88 ("It was not the unusual circumstances of Plaintiff's boarding that caused the altercation, but rather his refusal to leave the plane after he had been informed that he was not permitted to travel."); *see also Schaeffer v. Cavallero*, 54 F. Supp. 2d 350, 352 (S.D.N.Y. 1999) ("[E]ven assuming, *arguendo*, that [Trans World Airlines'] decision to ask plaintiff to leave [an aircraft] was wrongful, there was nothing to prevent plaintiff, once apprised that he would be forced to leave, from leaving on his own."). Put differently, Plaintiff's claim for damages depends on a putative chain of causation that was broken by Plaintiff's affirmative choice and the correlative power it entailed to avoid her alleged injury by merely remaining in the new row of seats that Defendant's flight crew had provided her. *See Grimes v. Nw. Airlines Inc.*, No. 98 Civ. 4794, 1999 WL 562244, at *3 (E.D. Pa. July 30, 1999) (granting summary judgment to defendant airline where decision by plaintiff not to cooperate with crew decision interrupted causal connection from airline act to alleged injuries).[4]   Had Plaintiff remained in the new seat

---

*Margrave*, 643 F. Supp. at 513 (noting appropriateness of summary judgment unless non-moving party has made "sufficient showing" that there is genuine issue of proximate cause). Even the case cited by Plaintiff, *Schneider v. Swiss Air Transp. Co.,* 686 F. Supp. 15, 17 (D. Me. 1998), reinforces the point that summary judgment was appropriate in *Margrave* because of the issues of causation.

[4] Defendant raises as a secondary argument for dismissal that it should be entitled to a comparative negligence defense under Article 21 of the Warsaw Convention. While the Supreme Court has recognized the applicability of such a defense, *see Olympic Airways*, 540 U.S. at 649 n.5; *see also Saks*, 470 U.S. at 407, the Court's findings obviate the need to reach it here.

she was offered by Defendant's flight crew, the incident in question could not have taken place.[5]

This Court is not unsympathetic to Plaintiff's personal discomforts stemming from her air travel. Plaintiff's Complaint and deposition make clear that she found unpleasant her initial seat with the reclined chair in front of her. Plaintiff also found less than ideal the proximity to the lavatory of the alternative seating provided to her by Defendant. Further, for purposes of this motion, the Court could even accept as contested Plaintiff's allegation that "[t]he flight attendant was not nice [or] considerate or caring toward the Plaintiff" and that he "did not care about the Plaintiff." (Pl.'s 56.1 ¶ 131). Still, the "intent of the Warsaw Convention was not to make carriers insurers of their passengers' well-being, but to create incentives for safe and economical travel." *Margrave*, 643 F. Supp. at 515 (citing *Saks v. Air France*, 742 F.2d 1383, 1389-90 (9th Cir. 1984) (Wallace, J. dissenting), *rev'd*, 470 U.S. 392). Here, Defendant did nothing to cause a threat to Plaintiff's safety. In fact, had Plaintiff cooperated with Defendant's reasonable efforts to avoid any risk of injury to her, Plaintiff could have enjoyed the rest of the flight and her subsequent vacation pain-free.

As previously noted, the Warsaw Convention provides the exclusive remedy for Plaintiff's injury. Because no reasonable trier of fact could find that Defendant's actions were the proximate cause of her injury, Plaintiff fails to establish an "accident" under Article 17 of the Warsaw Convention. Therefore, her claim also fails.

---

[5] Plaintiff also contends that Defendant's crew's behavior after the incident should influence the determination of whether an accident as defined by the Warsaw Convention occurred. She specifically complains about delay in receiving ice for her knee, difficulty in obtaining a wheelchair, and denial of a pain reliever by the crew personnel. Even when taken as true, however, these allegations involve conduct that followed the incident that allegedly caused injury to Plaintiff and are therefore irrelevant to whether the alleged incident qualifies as an accident under the Warsaw Convention.

Warsaw Convention. Therefore, her claim also fails.

### III. Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED, and the Clerk of the Court is ordered to close this case.

SO ORDERED.

Dated:      September 6, 2007
            New York, New York

                                    _____
                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE